**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CRISTINA SULLIVAN
aka CRISTINA DIMULESCU,

       Plaintiff,

                                    CASE NO.:

vs.

NAVIENT SOLUTIONS, LLC,

       Defendant(s).
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW**, Plaintiff, Cristina Sullivan, ("Plaintiff"), by and through the undersigned counsel, and hereby brings this Complaint and Demand for Jury Trial ("Complaint") against Defendant, Navient Solutions, LLC ("Navient" or "Defendant") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55- 559.785, ("FCCPA").

INTRODUCTION

1. Plaintiff's first cause of action arises out of the TCPA. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

2. The TCPA specifically prohibits any person "to make any call (other than for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or any artificial or prerecorded voice – (iii) to any … cellular telephone service…or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). Such calls are commonly referred to as "robocalls."

3. The TCPA was enacted by Congress in response to an increasing number of consumer complaints about telemarketer and debt collector phone calls.

4. In 2017, there were over 4,000,000 complaints reported to the Federal Communications Commission (FCC) and the Federal Trade Commission (FTC) regarding

robocalls-- 4,501,967 to be exact.[1]  It is important to recognize that this only reflects the number of individuals that actually made a complaint to these agencies.  There are likely a lot of violations that were never reported.

5. The Plaintiff's second cause of action arises out of the FCCPA.  The FCCPA is intended to prohibit creditors and third-party debt collectors from engaging in abusive, deceptive and unfair collection practices.

6. Plaintiff alleges that Defendant unlawfully called her cellular telephone in an attempt to collect an alleged debt in violation of the aforementioned statutes.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to and 28 U.S.C. §§ 1331 and 1337(a), in that this action arises under a United States federal statute, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"). Also, the TCPA specifically authorizes this Court to exercise jurisdiction under 47 U.S.C. § 227(g)(2).

8. This Court has personal jurisdiction over Defendant because (1) Defendant regularly does business in this District, (2) Defendant maintains systematic and continuous business contacts with the this State, and (3) Defendant has appointed an agent for service of process in this State.

9. Pursuant to 28 U.S.C. § 1367(a) this Court also has supplemental jurisdiction over the Plaintiff's state-law FCCPA claim in that it is so related to the federal TCPA claim that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1) and/or (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.  Defendant's unlawful communications were made to a mobile telephone number registered in this District, and Defendant's unlawful communications were received by Plaintiff in this District.

## PARTIES

11. Plaintiff is an individual and natural person, who resides in and at all times relevant

---

[1] *National Do Not Call Registry Data Book FY 2017,* Federal Trade Commission (December 2017), https://www.ftc.gov/sites/default/files/filefield_paths/dnc_data_book_fy2017.pdf

resided in Orange County, Florida.

12. Plaintiff is a "consumer" as that term is defined by Fla. Stat. § 559.55(8).

13. The debt in question is a "consumer debt" as defined by § 559.55(6).

14. Plaintiff has standing to bring a claim under the TCPA and FCCPA because she has been directly affected by the Defendant's violations of these statutes.

15. Defendant, formerly known as Sallie Mae, Inc, is the nation's leading student loan servicer. Defendant services the loans of more than 12 million borrowers and more than $300 billion in student loans.[2]

16. Defendant is a financial institution with its principal place of business located at 2001 Edmund Halley Drive, Reston, VA 20191 and conducting business in the state of Florida through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

17. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, suborgees, representatives, and insurers.

18. Defendant was and is a "person" as said term is defined under Florida Statute § 1.01(3) and is subject to the provisions of Fla. Stat. § 559.72 because said section applies to "any person" who collects or attempts to collect a consumer debt as defined in Fla. Stat. § 559.55(1).

19. Defendant regularly uses the mail and telephone in a business for the purpose of collecting consumer debts in this State.

## FACTUAL ALLEGATIONS

20. Defendant called Plaintiff on Plaintiff's cellular telephone approximately one hundred (100) times in an attempt to collect on a debt from Plaintiff after Plaintiff notified Defendant to stop calling.

21. The debt arises from an alleged student loan (the "Loan") incurred by Plaintiff for personal, family or household purposes.

---

[2] *Federal Student Loan Servicing Fact Sheet, Navient (2017)*, https://news.navient.com/static-files/19ae6017-d036-485f-a159-1bc0298f42de

22. Upon information and belief, Defendant, by and through its agents, representatives, and/or employees acting within the scope of their authority, attempted to collect on the Loan from plaintiff by using an "automatic telephone dialing system" (hereafter "ATDS") to place numerous calls to Plaintiff's cellular telephone, (917) XXX-9337.

23. TCPA defines an ATDS as equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, 47 U.S.C. § 227(a)(1).

24. Using its delegated authority, the FCC has interpreted the definition of an ATDS to include any devices with the capacity of dialing numbers automatically from a preprogrammed list, regardless of whether the numbers are randomly or sequentially generated. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092-93, para. 133 (2003) ("2003 TCPA Order").

25. By using such equipment, Defendant was able to make calls to the Plaintiff's cellular phone automatically without human intervention.

26. Upon answering any of Defendant's calls, Plaintiff was greeted by a noticeable period of silence or "dead air" before the Plaintiff was connected to a live person.

27. This period of silence is a characteristic of calls made using a predictive dialer. The FCC stated that "a predictive dialer falls within the meaning and statutory definition of "automatic dialing equipment" and the intent of Congress." Id. At 14091-92, paras. 132.-133. "In attempting to 'predict' the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either 'hang-up' on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as 'dead air.'" 2003 TCPA Order, 18 FCC Rcd at 14101-02, para. 146. See also id. at n.502.

28. Defendant has stipulated in at least one other lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS and that the calls were not made for emergency purposes. See *McCaskill v Navient Solutions, Inc.*, Case No. 8:15-cv-1559-T-33TBM (M.D. Fla), Dkt. 107 at 11; See also *Johnson v Navient Solutions, Inc.*, Case No. 1:15-cv-0716-LJM-MJD (S.D. Ind.), Dkt. 177 (granting final approval of $17.5 million TCPA class action settlement).

29. On or about April 2017, Defendant or some other person acting as its agent or on its behalf, began placing calls from an ATDS to Plaintiff's cellular telephone, in an attempt to collect an alleged debt incurred by Plaintiff.

30. None of the calls made by Defendant to Plaintiff's cellular phone number were made for an emergency purpose.

31. The calls originated from the following numbers: (856) 424-2504; (617) 762-5957; (202) 899-1318; (765) 637-0794; (765) 637-0783; (317) 550-5571; (302) 261-5501; (703) 439-1084; (703) 439-1086; (570) 904-8753; and (512) 377-9223. Upon information and belief, these numbers are owned or operated by Defendant. The list of phone numbers may not include other numbers Defendant may have made calls from.

32. On or about May 17, 2017, at 4:55 p.m., Plaintiff answered a call from Defendant originating from (856) 242-2504. Plaintiff heard a short pause before a representative for Defendant began to speak, indicating the use of an ATDS.

33. Defendant's representative informed Plaintiff that it was attempting to collect a debt. Plaintiff unequivocally revoked consent to be contacted on her cellular telephone. Despite Plaintiff's request, the calls persisted.

34. Plaintiff continued to receive phone calls from Defendant to her cellular telephone almost every day between May 2017 and July 2017.

35. Typically, plaintiff received between three (3) to (5) five calls per day. There were even days that Plaintiff received up to six (6) calls in one day.

36. On May 22, 2017, Defendant placed six (6) calls to Plaintiff's cellular telephone at 8:38 a.m.; 10:11 a.m.; 11:45 a.m.; 1:18 p.m.; 4:09 p.m.; and 5:38 p.m.

37. The next day, May 23, 2017, Defendant placed five (5) calls to Plaintiff's cellular telephone at 8:30 a.m.; 9:46 a.m.; 11:27 a.m.; 12:52 p.m.; and 4:11 p.m.

38. The next day, May 24, 2017, Defendant placed five (5) calls to Plaintiff's cellular telephone at 9:51 a.m.; 10:20 a.m.; 11:30 a.m.; 12:40 p.m.; and 4:36.

39. The next day, May 25, 2017, Defendant placed five (5) calls to Plaintiff's cellular telephone at 10:31 a.m.; 1:37 p.m.; 4:06 p.m.; 5:32 p.m. and 7:29 p.m.

40. Between May 2018 and August 2018, Defendant called Plaintiff's cellular telephone approximately one-hundred (100) times. All of these calls were made after Plaintiff

revoked consent with Defendant to be contacted on her cellular phone.

41. On or about July 21, 2017, at 2:51 p.m., Plaintiff answered a second call from Defendant originating from (512) 377-9223.

42. Defendant's representative informed Plaintiff that it was attempting to collect a debt owed by Plaintiff.

43. During the call, Plaintiff again unequivocally revoked consent to be contacted on her cellular phone.

44. Defendant called Plaintiff in a manner to predict the times she would be available to answer her phones.

45. For example, Defendant called Plaintiff at 8:38 a.m., May 22, 2017; 8:30 a.m., May 23, 2017; 8:51 a.m., May 24, 2017; 8:16 a.m., May 26, 2017; 8:35 a.m., May 30, 2017; 8:27 a.m., May 31, 2017; 8:29 a.m., June 9, 2017; 8:43 a.m., June 12, 2017; and 8:57 a.m., June 30, 2017.

46. Each and every call was a nuisance and annoyance to the Plaintiff. Even the unanswered calls caused Plaintiff to waste her time to pull out her cellular telephone, unlock the device, look at the caller identification, and then deal with the missed call notifications/voicemails and call logs that reflect the unwanted calls from Defendant.

47. Each and every call (answered or unanswered) also resulted in unnecessary expenditure to Plaintiff's cellular telephone's battery power and overall life of the phone itself.

48. At least one hundred (100) of the calls made by Defendant to Plaintiff's cellular telephone number were made without consent, they were made after Plaintiff expressly instructed Defendant not to call her again.

49. Plaintiff and her husband have three (3) young children to care for. The children are five (5) year old, six (6) years old and eight (8) months old.

50. In addition to caring for the children, Plaintiff also home schools the children. Defendant's constant and repeated calls often disrupted Plaintiff's ability to concentrate on the lesson plans. The calls were equally disruptive to the childrens' ability to focus on the curriculum.

51. The Plaintiff also has to work two (2) part-time jobs, just to make ends meet. Plaintiff works as a realtor and server.

52. Each time Plaintiff's phone rang, she would feel an overwhelming sense of anxiety

and frustration. Plaintiff knew she was behind on her bills, she had no money to pay to Defendant or her other creditors. She was struggling just to put food on the table.

53. Unfortunately, Plaintiff could not ignore the calls to her cellular telephone or turn it off. Plaintiff relies on her phone for her livelihood. Plaintiff must make herself available to her real estate clients at all times. Plaintiff must also be available by phone in order to pick up additional hours as a server. Plaintiff cannot financially afford to miss these calls.

54. The Plaintiff is consumed with stress on a day-to-day basis as it is – she cares for three (3) young children all under the age of ten (10), home schools the children, works two (2) part-time jobs and takes care of the everyday household duties. Plaintiff was constantly interrupted by Defendant's repeated calls during her conversations with clients, co-workers, and children. The Defendants calls were an annoyance and caused constant stress for the Plaintiff at work and at home.

55. In addition to the incessant phone calls, Defendant sent a multitude of collection E-mails and other written correspondence. Most of the E-mails and written correspondence contained language relating to time-sensitive options for repayment.

56. For example, Defendant mailed Plaintiff a letter in July of 2017 titled "Litigation Review." The letter stated that Defendant was preparing to refer the account to the "legal network partner to be reviewed for litigation."

57. Defendant mailed Plaintiff a second letter in August 2017 titled "Account Now Under Review for Litigation." This letter stated that Defendant "may pursue a judgment against Plaintiff." To the best of Plaintiff's knowledge, Defendant never filed a formal complaint against Plaintiff.

58. Defendant's conduct was not only willful but was done with the intention of causing Plaintiff such distress as to induce and harass her to pay the debt.

59. Defendant's phone calls caused Plaintiff to suffer from stress, frustration anxiety and embarrassment.

60. Defendant's phone calls also harmed Plaintiff by wasting her time.

61. Defendant's phone calls also harmed Plaintiff by causing general wear and tear to her cellular telephone and depleting the battery life on her cellular telephone.

62. Defendant's phone calls deprived Plaintiff of the opportunity to make or receive

other phone calls using her cellular telephone while Defendant was repeatedly calling her several times a day.

## FIRST CAUSE OF ACTION
## TELEPHONE CONSUMER PROTECTION ACT,
### [47 U.S.C. § 227, et seq.]

63. Plaintiff incorporates by reference the foregoing paragraphs of this complaint as if fully stated herein.

64. Defendant utilized an ATDS in an attempt to collect a debt from Plaintiff on her cellular telephone number.

65. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff on Plaintiff's cellular telephone using at ATDS after Plaintiff notified the Defendant to stop calling her.

66. Within four years prior to the filing of this action, Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or pre-recorded or artificial voice without prior express consent in violation of TCPA 47 U.S.C. § 227 (b)(1)(A)(iii).

67. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to treble damages up to $1,500 for each and very call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
## FLORIDA CONSUMER COLLECTION PRACTICES ACT
### [Fla. Stat. § 559.72 et seq.]

69. Plaintiff incorporates by reference the paragraphs one (1) through sixty-two (62) of this complaint as if fully stated herein.

70. The FCCPA was enacted to protect Florida consumer from creditors and debt collectors who seek to collect debts through illegal means.

71. At all times relevant to this action, Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

72. Defendant violated FCCPA 559.72(7) by willfully calling the Plaintiff several times a day on consecutive days, after Plaintiff asked Defendant to stop calling. The frequency of Defendant's calls would reasonably be expected to harass the debtor or her family.

73. Defendant also violated FCCPA 559.72(7) by willfully sending the Plaintiff letters after Defendant was told to stop calling, stating that Plaintiff's account is "Now Under Review for Litigation" and that Defendant "may pursue a judgment" against Plaintiff.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Navient Solutions, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Dated: July 27, 2018.

Respectfully Submitted,

By:*/s/ Aaron M. Swift*
Aaron M. Swift
Trial Counsel
FBN 0093088
Swift & Isringhaus, P.A.
10460 Roosevelt Blvd. N., Suite 313
St. Petersburg, FL 33716
Telephone: (727) 490-9919
Facsimile: (727) 255-5332
Email: aswift@swift-law.com
*Attorney for Plaintiff,*
*Cristina Sullivan*